IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jerome Long, #151047, ) | |
| ) | Civil Action No. 6:12-cv-1974-TMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Dr. Tomarchio, Medical Director, ) | |
| ) | |
| Defendant. ) | |
| ) | |

       The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The defendant is the Medical Director for the South Carolina Department of Corrections ("SCDC"). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       On September 20, 2012, the plaintiff filed a motion for summary judgment (doc. 22). The defendant filed a response in opposition on October 9, 2012 (doc. 24), to which the plaintiff filed a reply on October 18th (doc. 27). On October 31st, the defendant filed a motion for summary judgment (doc. 34). By order filed that same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 15, 2012, the plaintiff filed a response in opposition (doc. 37), and the defendant filed a reply on November 26th (doc. 39).

## **FACTS PRESENTED**

       The plaintiff is currently incarcerated at Perry Correctional Institution, which is part of the SCDC. He alleges that while he was incarcerated at McCormick Correctional

Institution, which is also part of the SCDC, the defendant denied him appropriate and timely treatment for pain and swelling in his scrotum and that this denial caused him to suffer for six months (am. comp. at 1-2). SCDC medical records show that the plaintiff first reported discomfort in his scrotal area to Dr. John McRee at the McCormick medical unit on March 29, 2012, and was diagnosed with a suspected hydrocele[1] on his left testicle (doc. 34-4, p. 11, encounter 734). He was provided the antibiotic Cipro and a jock strap (*id.*). The plaintiff saw Dr. McRee again on April 16th, still complaining of pain, and was prescribed Donnatal and scheduled for a scrotal ultrasound (*id.*, p. 10, encounter 737).

The April 26th ultrasound revealed a hydrocele, and the reviewing physician, Dr. Timothy P. Close of Imagecare, LLC, recommended a follow-up evaluation in six months (*id.*, p. 59). Upon his own review of the ultrasound, Dr. McRee sought authorization from the defendant, his supervising physician, to consult an outside urologist (*id.*, pp. 9-10, encounters 740-42). The defendant denied the request, because in his opinion, it was not necessary at that time (Tomarchio aff. ¶¶ 8, 12). The defendant's review of the ultrasound showed that the plaintiff's "small hydrocele . . . was not affecting blood flow to the testicle" and thus did not require surgery at that time. The defendant felt that the plaintiff should undergo "the normal treatment regime" of wearing a scrotal sling and taking pain medication (*id.* ¶¶ 10-12). The defendant did approve Dr. Close's recommendation for a follow-up ultrasound (doc. 34-4, p. 6, encounter 750; Tomarchio aff. ¶ 7).

The plaintiff was examined again by Dr. McRee on May 7th and was provided Naprosyn for pain (*id.*, p. 8, encounter 742). After his complaint was filed with this court on July 17th, the plaintiff visited the prison medical unit the next day requesting stronger

---

[1]Per the defendant's affidavit, "a hydrocele is a fluid collection on the testicle. Hydroceles are fairly common and generally are not harmful. Except in certain circumstances in which the flow of blood to the testicle is restricted, hydroceles do not constitute a serious medical condition" (Tomarchio aff. ¶ 9).

2

medication and another visit with the doctor (*id*., p. 6, encounter 751). However, the medical records show that he was a "no show for sick call" on July 27th (*id*., p. 6, encounter 752).

Since filing their respective motions for summary judgment, the parties have updated the court that the plaintiff did in fact have the follow-up ultrasound in November 2012 and was thereafter seen by a urologist and approved for surgery (doc. 37 at 2-3; doc. 39 at 2). The urologist stated in his treatment notes that he cannot guarantee the plaintiff relief, but will proceed because the plaintiff requests surgery (doc. 39-1 at 2). According to the defendant, he has approved the surgery since conservative treatment has not alleviated the plaintiff's concerns, and the plaintiff wishes to proceed with surgery (doc. 39 at 2). The plaintiff seeks monetary damages and asks for injunctive relief for proper medical treatment.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Deliberate Indifference to Serious Medical Needs***

The plaintiff alleges that the defendant was deliberately indifferent to his serious medical needs. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure

4

to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).  With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990).  "Plaintiffs must also show the subjective component-deliberate indifference.  An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Mere negligence or malpractice does not violate the Eighth Amendment. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff has failed to show that the defendant was purposefully indifferent to his medical condition by denying outside treatment or surgery after the first ultrasound.  The defendant relied on that ultrasound, showing that the hydrocele was small and did not "constitute a serious medical condition," in opting for "normal" treatment for six months, with a follow-up ultrasound thereafter (Tomarchio aff. ¶¶ 9-10).  The defendant's denial was in line with Dr. Close's recommendation that a follow-up ultrasound be taken in six months (doc. 34-4, p. 59).  The plaintiff has offered nothing to show that the defendant's decision to initially pursue a more conservative treatment regime for him was made maliciously or done to cause the plaintiff to suffer needlessly.  Moreover, the plaintiff's contention that the defendant denied him medical treatment for six months is

without merit. Between March and August 2012, the plaintiff's medical records show that he had at least 15 encounters with McCormick's medical staff, some of which were related to the ongoing treatment of his scrotal discomfort (doc. 34-4, pp. 5-12). These records reveal that he received medication and a scrotal sling to relieve his pain during the six-month period at issue, which is in line with the defendant's approved course of treatment (*id*.). There is no indication in these records, or in any other evidence before the court, that the plaintiff was denied medical care. Accordingly, his claim that the defendant was deliberately indifferent to his serious medical needs should be dismissed.

*Immunity*

To the extent the defendant is sued in his official capacity, he is entitled to Eleventh Amendment immunity. As a state agency employee and thus an arm of the state, he is entitled to sovereign immunity and is not a "person" in his official capacity subject to liability under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e). The defendant in his individual capacity is also entitled to qualified immunity from civil damages, as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as the plaintiff has failed to show that the defendant violated any of his clearly established constitutional or statutory rights.

*Injunctive Relief*

In his amended complaint (doc. 17), the plaintiff requested that an injunction be issued requiring the defendant to provide medical care. As set out above, the plaintiff has received medical care sufficient to meet constitutional requirements, and his care is ongoing. Accordingly, his request for injunctive relief should be denied.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendant's motion for summary judgment (doc. 34) be granted.  IT IS FURTHER RECOMMENDED that the plaintiff's motion for summary judgment (doc. 22) be denied.

s/ Kevin F. McDonald
United States Magistrate Judge

February 13, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).